UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOARD, IV,

                    Petitioner,                            Case Number: 09-10604
                                                                   Honorable David M. Lawson

v.

PAUL KLEE,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Petitioner Robert Hoard, IV has filed a *pro se* petition for a writ of habeas corpus alleging that his state drug and firearms convictions were obtained in violation of the federal Constitution. Hoard presently is serving a prison sentence for those crimes at the Gus Harrison Correctional Facility in Adrian, Michigan. He alleges that he is in custody in violation of his constitutional right to be free from unreasonable searches and seizures, to present a defense, to the effective assistance of counsel, and to a fair trial. The respondent has filed an answer to the petition asserting that the petitioner is procedurally barred from bringing his habeas claims in this Court because he failed to file a timely application for leave to appeal in the Michigan Supreme Court, and, alternatively, that the claims lack merit. The Court finds that the claims lack merit; therefore, the petition will be denied.

I.

       The petitioner was charged with the crimes of possession of less than 25 grams of cocaine, felon in possession of a firearm, possession of marijuana, and possession of a firearm during the commission of a felony (felony firearm). Before trial, his lawyer filed a motion to suppress evidence alleging that the search and seizure violated the Fourth Amendment. The trial court denied the

motion after a hearing. Hoard then was tried before a Saginaw County, Michigan jury in a five-day

trial. The petitioner was represented by counsel at the beginning of the trial, but after the first day

of testimony the petitioner waived his right to counsel and elected to proceed *pro se* with standby

counsel.

The Michigan Court of Appeals summarized the facts as follows:

Defendant's parole agent, Richard Riebschleger of the Michigan Department of
Corrections (MDOC), met with defendant's father, a policeman, the month before
defendant was to be paroled. Defendant was to live [with] his father, and
defendant's father assured Riebschleger that he would secure his service revolver,
a Sig Sauer, in a safe and that he would remove the other guns from the residence.
However, shortly after defendant was released from prison, his father was
hospitalized and defendant lived alone in the residence for eleven months.
Defendant's father died on June 27, 2004.

In January 2004 Riebschleger asked defendant whether his father's gun had been
moved and defendant told him it was at his sister's home in Virginia. Riebschleger
again asked defendant about the gun about a month later (in February 2004) and
defendant assured him "that it was with his sister in Virginia." On September 17,
2004, Riebschleger again asked defendant about the gun and that defendant "told
[Riebschleger] in a very clear, no nonsense manner that his sister, Vickie, had taken
control of the weapon in Virginia." Also on that day, defendant asked Riebschleger
about being a bounty hunter and Riebschleger told defendant that he could not be a
bounty hunter. Riebschleger said that defendant "wanted to debate about it" and
asked if he could just assist a bounty hunter and that Riebschleger told defendant to
"play it safe" and that it was "just simply not a good idea" because a "lot of the
standard conditions of parole would have been in conflict with working as a bounty
hunter."

On September 28, 2004, defendant reported to Riebschleger as scheduled, and
Riebschleger decided to give defendant a drug test. Defendant failed the drug test
and Riebschleger decided that defendant was "going to serve an eight day sanction
at the Buena Vista Corrections Center." Riebschleger told defendant to secure his
money and jewelry in his van before serving his sanction. This was routinely done
without a problem, but in this case, defendant "ended up leaving."

Once Riebschleger was aware that defendant had left the facility, he called him and
"instructed him to report back to the center immediately." Defendant replied that "he
had an obligation to take care of, he had to do some things at the house, personal
business to take care of." Defendant returned to the center after being gone "at least

-2-

an hour." When defendant returned, he was "processed into the center" which included taking an inventory of his belongings and doing "a strip search to make sure [defendant did not bring] . . . in any contraband."

While defendant was being processed, defendant began to "struggle with the corrections officer."   Riebschleger "quickly ran down there" and grabbed defendant's left hand where he "immediately noticed that [defendant] had contraband in his hand," including a "small roach type cigarette" and "full rolled cigarettes." Riebschleger and the corrections officer gave defendant "repeated orders to drop the contraband, to drop that little roach cigarette . . . which was about half an inch long." Riebschleger said that as they "started the process of taking [defendant] to the ground, [defendant] struck" the corrections officer "in the eye."

While defendant was on the ground, Riebschleger "noticed that [defendant] was . . . licking up the contraband, that small roach cigarette." Riebschleger later told his supervisor that defendant "had possibly just snuck in drugs" but that they would "never know because [defendant] swallowed the evidence."

Riebschleger indicated that defendant's behavior led to a search of defendant's van "to make sure there was no other contraband."  Inside the van was an owner's manual to a pistol, an unopened bottle of Corona's beer, bounty hunter's credentials and defendant's father's sheriff's hat.  Riebschleger indicated that the items in the van led Riebschleger and his supervisor to conclude that defendant was not being truthful about the gun and so they decided to search defendant's residence. Riebschleger's supervisor unlocked the house and watched the search.

MDOC agents found drugs "hidden in the kitchen above the cupboard," "the loaded pistol hidden in a fake plant above a china cabinet in the living room," "more sheriff's equipment, a training manuals [sic], collapsible baton, items from a uniform from the sheriff's department, and . . . clothing . . . that's identified as fugitive recovery agent clothing."  Vickie, defendant's sister, called Riebschleger in November 2004 and told him that defendant had lied to her about where the gun was, telling her "that a brother apparently had the weapon."

*People v. Hoard*, No. 267245, 2008 WL 274874, *1-2  (Mich. Ct. App. Jan. 31, 2008).

The court of appeals's summary is erroneous on one minor point.  The testimony actually established that Riebschleger's supervisor was consulted before the search but was not present during the actual search.  The house was unlocked and the search watched by *petitioner's* "boss," or supervisor, Cam Christopher.

-3-

Upon conviction, the petitioner was sentenced to concurrent prison terms of terms of three years, ten months to 15 years and four to 25 years, and a consecutive term of five years for the felony firearm conviction.  He then filed a direct appeal.

The petitioner's appellate counsel filed a brief challenging the denial of the motion to suppress evidence, alleging ineffective assistance of counsel and arguing that the state sentencing guidelines were scored improperly.  The petitioner filed a *pro se* brief raising six more issues, including  the denial of his constitutional right to present a defense, omission of a lesser included offense jury instruction, insufficiency of evidence of firearm possession, an additional sentencing error, prosecutorial misconduct, and another instance of ineffective assistance of counsel.  The court of appeals affirmed the petitioner's convictions and sentences on January 31, 2008.  *People v. Hoard*, No. 267245, 2008 WL 274874 (Mich. Ct. App. Jan. 31, 2008).  The petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but it was rejected as untimely, having been received on March 31, 2008.   The petitioner filed a motion for reconsideration in the supreme court, stating that he mailed the application for leave to appeal on March 28, 2008, and that it was timely because it was mailed within 56 days of the date his attorney mailed the court of appeals's decision to him.  However, the supreme court clerk rejected the motion in a letter dated April 22, 2008, explaining that the time to file the leave application had lapsed on March 27, 2008 and therefore the clerk was barred by Michigan Court Rule 7.306(B) from receiving a motion to file a late application for leave to appeal.

The petitioner timely filed his federal habeas petition in this Court.  The petition raises four claims for relief:

    I.      Petitioner's Fourth Amendment right to be free from unreasonable searches and seizures was violated by the warrantless search of his home not being in

compliance with the governing administrative rule and the fruits of the search were not suppressed.

II.     Petitioner's Fifth, Sixth, and Fourteenth Amendment equal protection and due process rights to present a defense were violated by the trial court denying defense witnesses and evidence.

III.    Petitioner's Sixth Amendment right to have effective assistance of counsel was violated by his attorney's conduct being outside the wide range of professionally competent assistance set forth in the *Strickland* standard.

IV.    Petitioner's Fourteenth Amendment right to have a fair and impartial trial was violated by the obvious trial errors and the prosecutor's categorically improper conduct.

Pet. at 16, 24, 34, 41. Each of these claims was raised in the petitioner's direct appeal.

The respondent filed an answer to the petition, arguing that this Court should not hear the merits of the petition because the petitioner failed to complete the direct appeal process when his application for leave to appeal was rejected as untimely by the Michigan Supreme Court. However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997)). Although a procedural bar may preclude relief, "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix,* 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the petitioner's claims.

II.

-5-

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, --- F.3d ---, ---, 2012 WL 833179, at *5 (6th Cir. Mar. 14, 2012). The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.

-7-

The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 2012 WL 833179, at *5; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

## A.

The petitioner first argues that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the admission of evidence seized in the warrantless search of his home.

The respondent argues that this claim is not cognizable on habeas review.  The Court agrees. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced

at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  The Sixth Circuit employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotation marks omitted).

Michigan provides ample opportunity for litigation of Fourth Amendment claims.  Typically, such claims are addressed before trial by means of a motion to suppress filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (holding that motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant in advance of trial).  However, even absent objections in the trial court, Michigan appellate courts entertain Fourth Amendment claims where it appears that the evidence in question affected the outcome of the trial.  *People v. Harris*, 95 Mich. App. 507, 509-10, 291 N.W.2d 97, 99 (1980).

In this case, the petitioner's Fourth Amendment claim was the subject of a suppression hearing in state court.  The petitioner's attorney filed a pretrial motion; the trial court did not conduct a separate evidentiary hearing, instead relying on the evidence from the preliminary examination. The trial court denied the motion to suppress, and after trial the petitioner appealed his conviction to the Michigan Court of Appeals, where he again presented his Fourth Amendment claim. The Michigan Court of Appeals addressed the claim and found no Fourth Amendment violation.  *Hoard*, 2008 WL 274874, at *2-4.

The petitioner received full and fair consideration of his Fourth Amendment claims in the state courts, and there is no evidence that presentation of the claim was frustrated by a failure of procedural mechanisms.   Therefore, habeas review is unavailable for the petitioner's Fourth Amendment claim.

B.

The petitioner next contends that he is entitled to a new trial because his Fifth, Sixth, and Fourteenth Amendment rights to present a defense were violated by the trial court's refusal to hear his evidence and defense witnesses.  He contends that he was prevented from presenting evidence at trial that Department of Corrections employees induced him to violate the firearms statute.

The Supreme Court has interpreted the due process clause "to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  In general, states have broad leeway to decide what relevant evidence a defendant may present in a state criminal trial. *See Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996).  There are, however, a few customs and principles "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and it is constitutional error to limit a defendant's right to present evidence where such exclusion would offend traditional principles of justice.  *Engelhoff*, 518 U.S. at 43 (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).

The petitioner asserts that he was denied the opportunity to assert the defense of entrapment by estoppel and to file a witness list in support of that defense.  The defense of entrapment by estoppel, as recognized by Michigan law, has the following elements:

> [T]he entrapment by estoppel defense applies where the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith

-10-

and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement.

*People v. Woods*, 241 Mich. App. 545, 558, 616 N.W.2d 211, 217 (2000) (quoting *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997)).

The trial court refused to permit the petitioner to offer witnesses in support of the defense of entrapment by estoppel because the petitioner did not submit his witness list until the trial had already begun. The exclusion of the petitioner's witness list because it was not given to the court in advance of trial does not offend fundamental principles of justice. The Supreme Court has never held that requiring witness lists in advance of trial violates a criminal defendant's fundamental rights. On the contrary, the Court has upheld procedural rules that prevent a defendant from offering evidence or testimony when he has not complied with state procedures. *See Williams v. Florida*, 399 U.S. 78, 81-86 (1970) (upholding constitutionality of Florida's notice of alibi rules); *Michigan v. Lucas*, 500 U.S. 145, 151-53 (1991) (rejecting *per se* rule prohibiting exclusion of evidence of defendant's past sexual conduct with victim where defendant filed to comply with notice and hearing requirements of Michigan's rape shield law). The Michigan courts' holdings denying relief on this aspect of petitioner's claim does not unreasonably apply those precedents.

The petitioner also asserts that his due process rights were violated by the failure of the court to permit him to assert a defense of entrapment by estoppel.

In federal criminal trials, a defendant is entitled to an entrapment instruction "whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States*, 485 U.S. 58, 62 (1988). The Supreme Court, however, has never held that this right to present an entrapment defense is fundamental or grounded in the United States Constitution. *See id.* (citing *United States v. Russell*, 411 U.S. 423, 433 (1973)).

-11-

Even if an entrapment defense were deemed fundamental, the petitioner would not be entitled to habeas relief because the Michigan court held that there was insufficient evidence under Michigan law for a jury to find entrapment by estoppel. This Court is bound by the state court's construction of its own law on the question of the required elements of the defense. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus" (citations omitted)). The requirement of a threshold showing is consistent with due process. *See Taylor v. Withrow*, 288 F.3d 846, 853 (6th Cir. 2002) (holding that the petitioner not entitled to instruction on self defense where state court held that the evidence was insufficient to sustain defense under state law); *cf. United States v. Bailey*, 444 U.S. 394, 415-16 (1980) (upholding trial court's refusal to instruct on affirmative defenses of duress and necessity where defendants failed to introduce sufficient evidence to submit defenses to jury).

Under Michigan law, an entrapment defense must be raised by pretrial motion, and, once raised, the court then conducts a hearing at which the defendant bears the burden of proof. *See People v. D'Angelo*, 401 Mich. 167, 183, 257 N.W.2d 655, 662-63 (1977); *People v. Pierce*, 272 Mich. App 394, 400, 725 N.W.2d 691, 695 (2006). The petitioner never filed such a motion. The Michigan Court of Appeals found that the petitioner was not deprived of his right to present a defense because the evidence that he sought to introduce did not support his theory of entrapment by estoppel as a matter of Michigan law. The record supports that holding. The petitioner admitted at trial that Riebschleger told him that he was not allowed to possess or be around weapons, but he denied being in "possession" of the gun found at his house.

> Defendant never asserted an entrapment defense at trial, and there was no need for
> the trial court to hold an evidentiary hearing. Further, there is no evidence that

-12-

anyone told defendant he could reside in a house where he could access a gun. To the contrary, the record indicates that defendant was told repeatedly that he was not to have access to that gun. Further, after defendant's father died, he was asked repeatedly if the gun had been removed because defendant was not allowed to keep it. Therefore defendant, who has the burden of proof, has failed to demonstrate the elements of an entrapment defense.

Defendant's witness list was denied because he gave it to the court on the day trial began. At that time, the trial court pointed out that it had given defendant the deadlines almost a year prior, so there was no excuse for defendant filing the witness list late. Under these circumstances, no abuse of discretion is established.

*Hoard*, 2008 WL 274874, at *8.

The court of appeals's holding does not amount to an unreasonable interpretation of the facts, and it appears to apply state law faithfully. The conclusion that the petitioner was not deprived of his federally protected right to present a defense is not contrary to or an unreasonable application of federal law. The petitioner is therefore not entitled to relief on this claim.

C.

The petitioner argues next that he was deprived of his Sixth Amendment right to effective assistance of trial counsel.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained recently:

-13-

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ---, ---, 130 S. Ct. 1473, 1485 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ---, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner first argues that his counsel was ineffective because he refused to present a defense of entrapment by estoppel and to file a witness list in support of that defense. The Michigan Court of Appeals rejected this claim because the facts adduced at trial did not support it, and all the facts that might have impacted the defense already were before the jury. That court explained:

It is true that defendant was given permission to live in a home that contained a gun owned by his father. However, that permission was premised on the father's promise to keep the gun locked up and away from defendant. Once defendant's father died, it is clear that Riebschleger wanted the gun removed. According to Riebschleger,

-14-

he repeatedly received assurances from defendant that the gun had been removed (by defendant's sister). Defendant denied this. Defendant also testified that the authorities had not come to his home to confiscate the gun after his father's death. Thus, the dispute underlying a claim that he was entrapped was presented to the jury. Defendant fails to show that he was denied effective assistance on this basis.

*Hoard*, 2008 WL 274874, at *5.

The state court's construction of the facts is not unreasonable. The record certainly supports it. The ruling can be read as a finding that no deficient performance occurred because counsel could not be expected to advance an unsupported defense. *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998). Or it could be interpreted to mean that no prejudice occurred because the jury heard all the facts that counsel could have offered and concluded that the petitioner was guilty. Either way, the state court's decision withstands the generous review standard that applies in federal habeas proceedings. The court of appeals's rationale amounts to a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788. Prejudice is established by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The state appellate court evaluated the strength of the state's case and concluded that the defendant would have been convicted even if defense counsel had advanced the entrapment by estoppel defense.

The petitioner also argues that his trial counsel was ineffective because he failed to challenge under state law the admission of evidence obtained in the warrantless search of the petitioner's house. The Michigan Court of Appeals held that petitioner's trial counsel was not deficient by

-15-

failing to oppose that evidence because the search was proper under Michigan law when it occurred. Once again, the Michigan court's interpretation of state law concerning the search of parolees is binding on this Court. *Bradshaw*, 546 U.S. at 76. And such a search would not offend the Fourth Amendment. *See Samson v. California*, 547 U.S. 843, 857 (2006); *United States v. Smith*, 526 F.3d 306, 308-09 (6th Cir. 2008). Because an attorney does not perform deficiently if he fails to advance a meritless argument, *Norris*, 146 F.3d at 336, the Michigan court's holding was not an unreasonable application of *Strickland*.

The petitioner also asserts that his counsel was ineffective because he failed to interpose a relevancy objection to the admission of testimony about fugitive recovery materials and sheriff's department property found in the petitioner's van and house. The Michigan Court of Appeals rejected this argument, finding that the evidence was relevant because it corroborated Riebschleger's belief that the petitioner had retained possession of his father's gun. The court also determined that there was direct evidence in the record on the point, so any objection by trial counsel would have been futile. The Court cannot conclude those determinations misapplied *Strickland*. Defense counsel engages in sound trial strategy by foregoing frivolous objections. Moreover, the evidence challenged here by the petitioner was relevant to explain Riebschleger's conduct.

The petitioner also argues that his trial counsel was ineffective for failing to object to two hearsay statements admitted through Riebschleger's testimony. The first was that the petitioner's father told Riebschleger that he would keep his service gun in a safe; the second was that the petitioner's sister Vickie had told Riebschleger that the petitioner had lied to her about the location of the gun. The Michigan Court of Appeals rejected the argument, finding that the statements were not inadmissible hearsay because they could have been offered for the purpose of state of mind or

impeachment and the petitioner's attorney could have made his decision based on trial strategy. The Michigan court also found that the petitioner failed to show that he was prejudiced by the admission of the statements because of overwhelming evidence of guilt.

That holding did not unreasonably apply *Strickland*. The state court's evidentiary rationale was plausible. And the Supreme Court requires "a heavy measure of deference" to counsel's strategic decisions. *Strickland*, 466 U.S. at 691; *see also Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008). This Court also agrees that evidence of the petitioner's guilt of the felon in possession charge was overwhelming.

Finally, the petitioner contends that he was deprived of the effective assistance of counsel because his trial lawyer failed to file an interlocutory appeal of the trial court's orders denying his motion to suppress evidence and for release on bail for violation of his right to a speedy trial. The petitioner raised this claim before the Michigan Court of Appeals, which denied it on the grounds that the petitioner had not shown how an interlocutory appeal would have been different than an appeal of the same issues after trial. See *Hoard*, 2008 WL 274874, at *4-6. That court's conclusion that no prejudice ensued reasonably applies *Strickland*.

The petitioner has failed to show that he was denied the effective assistance of trial counsel. He is not entitled to habeas relief on his third claim.

### D.

Finally, the petitioner argues that his right to a fair trial was violated by trial court errors and prosecutorial misconduct. He argues that the prosecutor committed misconduct by introducing evidence obtained from the warrantless search of petitioner's house, by prosecuting him for possessing a weapon that he claims his parole agent permitted him to possess, by asking petitioner

-17-

to opine on the testimony of other witnesses, and by making statements not supported by any evidence.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious that it rendered the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). The standard of review of a prosecutorial misconduct claim "is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly*, 416 U.S. at 642). A claim of prosecutorial misconduct is only cognizable on habeas review if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Bowling*, 344 U.S. at 512 (internal quotation marks omitted). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (other citations omitted)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.2006) (quoting *Donnelly*, 416 U.S. at 645).

This circuit applies a two-pronged test to determine whether a state court reasonably applied federal law in holding prosecutorial misconduct did not render a petitioner's trial fundamentally

-18-

unfair. *Slagle*, 457 F.3d at 515. The court must first determine if the conduct was improper. *Id.* at 516. If the answer to the first question is yes, the court must then decide if the improper conduct was sufficiently flagrant to warrant reversal. *Id.* Four factors are to be considered in deciding if the improper acts or statements were sufficiently flagrant to warrant reversal: (1) the strength of the evidence against the defendant, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks or conduct were deliberate or accidental. *Ibid.*

The prosecutor committed no misconduct by prosecuting the petitioner on firearms charges. After all, the evidence established that he was guilty of the charge. The petitioner did not dispute that he was a felon, and he did not dispute seriously that the authorities found a firearm in the house in which he was living alone. The crux of the petitioner's defense appeared to be that he did not "possess" the gun that his father had left in the house or, alternatively, that he was led by government officials to believe that he could live in the house legally with the gun despite his father's death. There was nothing improper about the prosecution of those charges.

The petitioner asserts that the prosecutor improperly introduced and commented on hearsay evidence. That evidence was admitted without objection from the defense. A prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). The admission and discussion of hearsay statements do not constitute prosecutorial misconduct.

The petitioner also asserts that the prosecutor improperly asked the petitioner to opine on the veracity of Riebschleger's testimony. At the end of cross-examination, the prosecutor asked the petitioner the following:

> Q.   This agent has testified that on at least three occasions you very specifically told him to his direct questioning that your father's service firearm, the gun that's sitting there in that — in one of those bags, had been removed by your sister. Are you saying that he is lying?
>
> A.   I did not tell him that.

Trial Tr., Sept. 15, 2005 at 183. And on recross-examination:

> Q   Sir, you've mentioned your sister Vickie again. Why exactly would it be that she would lie and say that you told her that you'd given the gun to another relative?
>
> A   I don't know that she said that, sir. I was not present.
>
> Q   Okay. So you don't think she would have any reason to lie; isn't that true?
>
> A.   I don't know if she said anything. I don't know if she's even been in contact with him. I've been incarcerated for the last year.
>
> Q.   So you're saying you don't know if she would lie or she wouldn't lie?
>
> A.   I don't know if she even had a statement made, sir, I can't say —
>
> Q.   Thank you.
>
> A.   — one way or another.
>
> Q.   In the end, it's your credibility versus this person's credibility, correct, and the evidence we have, right?
>
> A.   It's on the truth, sir, the whole truth.

*Id.* at 188-89.

-20-

That line of questioning likely was improper.  Under Michigan law, a cross-examiner may not ask a witness to comment on the credibility of other witnesses; credibility determinations are the province of the jury.  *People v. Buckey,* 424 Mich. 1, 17, 378 N.W.2d 432, 440 (1985).

The petitioner also asserts that the prosecutor committed misconduct in his closing statement by stating that the evidence showed that there was a lockbox in the house and that the petitioner's father had agreed to store the gun in the lockbox.  The petitioner argues that Riebschleger testified that the gun was to be stored in a safe, not a lockbox, and no safe was found on the premises.  The petitioner argues that the prosecutor also committed misconduct by claiming in his opening statement that the petitioner left the corrections center for two to three hours, when the testimony from Riebschleger indicated that it was "at least an hour."  The petitioner also asserts that the prosecutor committed misconduct by stating that the fugitive recovery agent identification found in the petitioner's van was false or fraudulent.  Finally, the petitioner argues that the prosecutor committed misconduct by suggesting in closing argument that the petitioner "abuse[d] . . . his father's memory" by bringing cocaine and marijuana into his father's house after his death.  That statement is improper because it invites the jury to convict based on factors irrelevant to guilt.

Even if these statements were improper, the prosecutor's conduct was not sufficiently flagrant to require relief.  As mentioned, the strength of the evidence against the defendant was substantial.  The Court cannot find from the record that the prosecutor intended to mislead the jury.  Many of the statements muffed the facts, but they were reasonably close to the actual testimony.  The remarks, for the most part, were isolated.  And it does not appear that the prosecutor's transgressions, such as they were, were intentional.  Moreover, prosecutorial misconduct will form

-21-

the basis for habeas relief only if the conduct was so egregious that it rendered the trial fundamentally unfair. *Donnelly*, 416 U.S. at 643-45. The prosecutor's conduct did not render the petitioner's trial fundamentally unfair.

The Michigan court did not unreasonably apply federal law in rejecting the petitioner's claim of prosecutorial misconduct. The petitioner is not entitled to habeas relief on this claim.

## III.

The state courts' decisions in this case were not contrary to federal law, did  not unreasonably apply federal law, and did not amount to an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 22, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 22, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---